## Tax Review Board of the City of Philadelphia v. Cuneo Eastern Press, Inc. of Pennsylvania

*Albert J. Persichetti,* Deputy City Solicitor, for City of Philadelphia.

*John W. Frommer, Jr.,* of *Dilworth, Paxson, Kalish, Levy & Coleman,* for taxpayer.

SPORKIN, J., October 17, 1973.—This case comes before us on the appeal of Cuneo Eastern Press, Inc. of Pennsylvania (Cuneo), from a decision of the Tax

Review Board of Philadelphia affirming an assessment of additional mercantile license tax amounting to $15,403.45 for the years 1956-1961, inclusive, by the City of Philadelphia (city).[1]

The relevant facts may be summarized as follows:[2]

Cuneo is a corporation with its place of business in Philadelphia, engaged in the printing and binding of magazines and other publications and catalogues under complex printing contracts with publishers. Cuneo, and the related industry in general, itemizes specific charges in its larger contracts, for each of the various steps in the total operation.[3] In smaller contracts, charges for each operation are not so itemized but, instead, a single price is quoted by Cuneo for the entire issue to be printed and bound. Cuneo never enters into a contract with a publisher for the shipping and delivery phase alone, nor does it ever bill a customer separately for the mailing operation. In its internal accounting process, however, Cuneo breaks down each of its separate operations so as to examine its overall process in detail and thereby eliminate waste.

In the process of putting a publication together, of packaging the publication, of passing it from the Cuneo plant to carriers for delivery, the operations of Cuneo's binding and mailing department are under the direction of a single superintendent. In some

---

[1] While the Tax Review Board is the named plaintiff in this action, the case was prosecuted by the office of the city solicitor. For this reason, we refer to the board hereinafter as the city.

[2] In considering the instant appeal, the court restricted itself to those facts which were stipulated, and testimony which was adduced at the tax review board hearing on June 29, 1965.

[3] These steps include such functions as composing, proofreading, various press operations, inks, binding, mailing and shipping.

cases the finished product is delivered by Cuneo to its customer for distribution by the customer, but, frequently, Cuneo, at the direction of its customer, delivers the publication directly to the customer's customers.[4]

In October 1956, the city determined that Cuneo was a "manufacturer" as defined by section 19-1001(8)[5] of the Philadelphia Code for purposes of assessing mercantile license tax against Cuneo. In accordance with and relying upon this decision by the city, Cuneo filed mercantile license tax returns for the years 1956 to 1961, inclusive, excluding from gross receipts the moneys received, attributable to publications delivered to out-of-the-city customers of Cuneo's customers. As a result, Cuneo reported as taxable receipts, and paid taxes on $503,620 as its gross receipts. At an audit in 1963, the Department of Collections of the City of Philadelphia assessed Cuneo for omission of certain sales categorized by the Department of Collections as salvage sales, for "drop shipments to third parties," for deliveries to common carriers and for mailing and wrapping "services." Cuneo then filed a petition for review of such assessments with the Tax Review Board (board) of Philadelphia.

---

[4] We shall, at many points hereinafter, be referring to a dichotomy between Cuneo's "customers" and the "customer's customers." We adopt this terminology, albeit perhaps somewhat confusing to the reader, because past decisions have used this delineation. Thus, when we refer to Cuneo's "customer" we mean the publisher, who has contracted with Cuneo for the printing and binding of its publication, and when we refer to the "customer's customer," we are speaking of the publisher's subscribers, or of the individual purchasers of the publication.

[5] The pertinent language of the code reads as follows:

"(8) Manufacturer. Any person who sells goods, wares and merchandise of his own growth or production."

The first three grounds for additional assessment noted above, namely salvage sales, drop shipments to third parties and deliveries to common carriers, were settled between the parties prior to a determination by the Tax Review Board. The fourth ground, that of the alleged "services" of mailing and wrapping, was held by the board, after a hearing on June 29, 1965, to be a separate and distinct *service* provided by Cuneo, and, therefore, subject to the mercantile license tax. The amount of receipts attributed by the city assessors to mailing and wrapping for the years involved, 1956 to 1961, inclusive, was $5,134,484 and the tax assessed by the city on that amount was, as heretofore noted, $15,403.45. The board relieved Cuneo of all penalty thereon, and indicated that interest accruing since January 1, 1966, would be waived, provided that Cuneo paid whatever was due within 30 days of a final decision in this matter.

From this decision affirming the $15,403.45 assessment, the instant appeal by Cuneo followed. Upon examination of the relevant ordinance, statutes, regulations, case law and administrative decisions, we have concluded that the appeal should be sustained and the decision of the board reversed.

The city has based the above additional tax assessment upon the argument that, although receipts from the manufacture and delivery, *directly to the customer,* of a magazine printed by Cuneo would be exempt from the mercantile license tax, a contract involving delivery by Cuneo to the *customer's customer* involves Cuneo in an additional *service business.*

The city contends that where Cuneo contracts with its customer not only to print the customer's materials, but also to deliver them to the customer's *customers* rather than to the customer itself, Cuneo

has actually entered into two separate agreements. The first agreement would be a sale of manufactured *goods*, as contemplated by section 19-1001(6)(c) of the Philadelphia Code,[6] but the second is the sale of a separate packaging and delivery *service*, and thus not within the purview of the exemption, for by delivering to the customer's customers, the city asserts that Cuneo is performing and charging for the "services" of saving the customer from expenses the customer would otherwise be obliged to incur itself. The city thus argues that receipts from sale of manufactured goods, with delivery of same to the customer itself, should be treated *differently* from the sale of the same goods with delivery to the customer's *customer*. With this argument, we cannot agree.

The relevant ordinance here involved, section 19-1001(6)(c) of the Philadelphia Code, provides for the *exclusion* from "gross receipts" subject to the mercantile license tax of receipts attributable "to any item of sale or lease involving the bona fide *delivery* of goods, commodities, wares, or merchandise to a location regularly maintained by the other party to the transaction outside the limits of the City." (Italics supplied.) It is, therefore, apparent to us that where, pursuant to the sale of goods manufactured by the taxpayer, delivery is made to an out-of-city business location of its customer, the Mercantile License Tax Ordinance expressly contemplates exclusion from the tax base of receipts from this entire transaction, including delivery charges.

This conclusion is in keeping with the purpose and policy of section 19-1001(6)(c) of the Philadelphia Code which have been discussed by David

---

[6] Quoted, infra.

H. Rosenbluth, an expert in the field of taxation, in the following manner:

"These exemptions for out-of-city sales were incorporated into the law in an effort to relieve local businesses from the burden of a tax not imposed upon outside competitors": Rosenbluth, Pennsylvania Busness Taxes 122 (1959).

The city further concedes that the packaging and sending of the manufactured product to the business location of the *customer itself* would unquestionably be part of the manufacturing process, and receipts from such delivery functions would be excluded under section 19-1001(6)(c) of the Philadelphia Code.

In examining the relevant precedents in this area, as stated by both parties, one finds a dearth of applicable decisions. We have examined Perfect Photo Service, Inc., Tax Review Board opinion no. 61-16 (1961), and Commonwealth v. Dinnien, 320 Pa. 257, 182 Atl. 542 (1936), cited by the city as authority for its position herein, but we find these decisions to be without application to the present question. Both cases hold that a business is separable where the taxpayer's *primary* business is *partly* manufacturing *and* partly service (such as manufacturing frames for slides and providing the service of developing prints of photographs in Perfect Photo), but neither case speaks to the question of whether the *delivery* of goods sold by a taxpayer whose primary business is *solely* manufacturing is a separate service business.

Our own research, however, has led us to the Tax Review Board decisions and opinions in Bless Bindery Company, opinion no. 60-11 (1960), and Main Line Manufacturing Corp., opinion no. 60-10 (1960). In Bless the taxpayer was, like petitioner in Perfect Photo, engaged in both selling manufactured goods

(such as assembling, sewing and binding the pages of a book) and in contracting to provide services (such as cutting and folding large printed sheets into pamphlets). The city argued in Bless that where the *manufactured* goods were *delivered* by Bless to its *customer's customers*, rather than to the customer itself, receipts from delivery of such goods were not exempt from the Mercantile License Tax.

The board did not accept the city's argument, however, stating:

It is thus plain to us that although the precedents in this area are meager in number, what authorities do exist construe delivery to the customer's out-of-city customers as being identical to delivery at a "location regularly maintained by the other party to the transaction outside the limits of the City," and, therefore, exempt from the mercantile license tax base; to treat Cuneo differently for tax purposes from other manufacturers making out-of-city deliveries to their customer's customers would, we believe, constitute a violation of the Uniformity Clause in article IX, sec. 1, of the Pennsylvania Constitution.

Although we realize that the principle of uniformity in application of the law does not go so far as to require perpetuation of administrative error, Stillman v. Tax Review Board, 402 Pa. 492, 166 A. 2d 661 (1961), we find the principles discussed heretofore to be salutary policy, and, therefore, find ourselves impelled to follow and to extend these very principles. We have, as stated, found no direct authority concerning the exact question of whether the mailing department of a manufacturer can be treated as a service department which is segregated from the manufacturing functions, but our examination of the wording and policy of the ordinance itself and of the provisions and policy of analogous Pennsylvania State tax laws and regulations leads

us to conclude that the packaging and mailing of the manufactured goods to the customer's place of business is a part of the *manufacturing* process, and is not, as argued by the city, a separate service business.

Albeit not controlling upon the precise question before us, we nonetheless find it persuasive that both the Pennsylvania Capital Stock Tax and Pennsylvania Sales Tax Regulation 225 define equipment used in manufacturing to encompass machinery utilized for packaging and delivering the product. Thus, packaging and delivery services performed by the manufacturer are regarded as inseparable from, and a part of the overall *manufacturing* process under the Pennsylvania Sales Tax Regulations and under the Capital Stock Tax.

Pennsylvania Sales Tax Regulation 225, defining manufacturing in section 2a(2)(a) and (d) relative to the manufacturing exemption, provides, in pertinent part, that:

"(a) General—Machinery, equipment [and foundations therefor,] and supplies which are used in the actual production or to transport, convey, handle or store the product from the time the raw material enters the manufacturing or processing operation to the time the product is packaged, are considered to be directly used in manufacturing-process operations . . .

"(d) Packaging—Wrapping equipment and supplies . . . used in packaging which passes to the ultimate consumer are directly used and therefore exempt."

Similarly, in defining the term "manufacturing", relative to the "manufacturing, processing, research or development" exemption of the Pennsylvania Capital Stock Tax Act of June 1, 1889, P. L. 420, as amended by Act of May 16, 1935, P. L. 184, 72 PS § 1871, our Pennsylvania courts have declared, and taxing authorities have long conceded that capital of a manufacturing company, which is applied to the *sale*

instead of the manufacture of company products, is also considered for purposes of the exemption to be invested in and exclusively employed in carrying on *manufacturing*. See Commonwealth v. National Oil Co. Ltd., 17 Dauph. 276 (1914). As explained in Mahon, State Taxation of Corporations in Pennsylvania at 102 (11th Ed., 1968):

"With regard to the subsidiary question raised by the City concerning what is delivery outside the City of Philadelphia, it appears from the record that taxpayer frequently delivers the finished products not to its customer but to others upon the instruction of its customer. In those cases where the customer does not have a place of business in the City of Philadelphia and instructs the petitioner to deliver the goods to a place outside the City of Philadelphia, it is our opinion that the petitioner is entitled to the benefits of the exclusion provided for in Section 19-1001(6)(c) of the Code. (Citing Main Line Manufacturing Co., supra). Where petitioner's customer has a place of business in the City but directs that the finished goods be delivered to a different branch of the customer's business which is a location regularly maintained by the customer outside the limits of the City and delivery is directed to that place in good faith and not for the purpose of evading payment of taxes, the receipts are likewise excludible": Bless, supra at pages 4-5.

This construction adopted by the board regarding section 19-1001(6)(c)[7] was even more clearly enunciated in its opinion in the Main Line Manufacturing case, referred to previously. There, the board stated as follows:

"The fact that the petitioner delivers the finished materials to its customer's customers rather than to

---

[7] Quoted, supra.

its own customer is immaterial in determining the excludibility of the receipts under Section 19-1001(6)(c) of the Philadelphia Code . . . The fact that, to save delivery and handling expense, the customer directs the goods to be delivered to the location of its own customers rather than to its own place of business has been determined by both the City Solicitor and this Board to comply with the requirements of that Section of the Code": Main Line Manufacturing, supra, at page 3.

The board further noted in Main Line that the city had *conceded* that Main Line was also entitled to an exclusion of that portion of its receipts "from the performance of delivery services" for out-of-city deliveries: Main Line Manufacturing, supra, at page 5. Receipts from deliveries inside the city remained, of course, subject to inclusion in the tax base.

The principle that if a bona fide sale is made to a customer whose regular place of business is outside Philadelphia and, at the direction of the customer, delivery is made for good reason and not for tax evasion purposes to a third party (the customer of the customer) who is also located outside Philadelphia, the seller is entitled to exclude receipts for such sales from his mercantile license tax obligation, was also firmly expressed in Mercantile License Tax Ruling No. 55-12 (1955), issued by then Deputy City Solicitor Helen S. Chait.[8]

"Thus the term 'manufacturing, processing, research or development' relates not merely to that specific act, but, generally, to the business or series of necessarily related activities in which all activities including selling are integrally included."

---

[8] Mrs. Chait later became a member of the tax review board, and occupied the position of chairman at the time of the hearing before the board in the instant case.

Mahon further states that:

"Manufacturing, processing, research or development is not confined to the actual direct manufacturing etc. operations but includes, in general, the 'business' of the manufacturer, processor, researcher or developer as such . . . The statute has been so construed *with particular application to investment in equipment for the delivery of the manufactured products.* (Citing Commonwealth v. National Oil Co., Ltd., supra.)" Id. at 110. (Italics supplied.)

[Moreover, although the burden of proof is generally on the taxpayer claiming an exemption, where a corporation is organized exclusively for manufacturing purposes, the burden of proof has been held to shift to the Commonwealth to show that part of the capital stock is not actually and exclusively employed in manufacturing within the State: Com. v. Curtis Pub. Co., 42 Dauph. 436 (1936)].

Since the delivery of manufactured goods is necessarily related to the manufacturer's business and, as with Cuneo herein, is integrally included in the manufacturing activity, the delivery by Cuneo to the customer's customer of goods manufactured and sold by Cuneo to an out-of-city customer would be considered a part of the *total manufacturing process* under the Pennsylvania Capital Stock Tax and the relevant State tax regulation and we believe that this same construction should apply to the mercantile license tax provisions herein at issue.

Finally, apparently recognizing this principle of tax administration, holding services, performed as an integral part of a manufacturing operation, to be subject to the manufacturing exemptions the city intimates in its supplemental brief that it has *now* decided that its prior determination that Cuneo is a manufacturer was erroneous, and states that it shall hereafter

consider Cuneo's entire business to be solely a service operation. The city seeks to have this court consider the city's previous characterization of Cuneo's business to be inoperative, and further seeks to have us *retroactively* apply the city's *new* determination as to the nature of Cuneo's business.

Such a request by the city for retroactive application of a new ruling by its Law Department, however, is diametrically opposed to the recent Formal Opinion No. 334, issued by the City Solicitor on February 16, 1973. The conclusion of that opinion reads as follows:

"[R]ecent Court decisions have been in favor of prospective application only of a changed tax decision, ruling or regulation which now renders a person subject to tax. This trend is reflected in at least three Law Department rulings.

"Accordingly, it is concluded that where any tax imposed by the City of Philadelphia has been interpreted by regulation, Department ruling, administrative decision or judicial decision and a taxpayer has, in good faith reliance thereon, failed to file a return or to include income or receipts in a return, in the event such interpretation was or is subsequently changed to make such income or receipts subject to taxation when it had not been so prior thereto, then no assessment should be made nor should any action be instituted or maintained against such taxpayer to enforce collection for any period prior to the date of change in interpretation."

We cannot, therefore, retroactively adopt the city's new view of Cuneo's operation as a service business, but instead must continue to apply the city's characterization of Cuneo, as expressed at the board hearing, as a *manufacturer* which delivers to the customer's

customer.[9] As borne out by the previous discussion, receipts from out-of-the-city delivery operations by such a business are exempted from inclusion in the mercantile license tax base.

Accordingly, in light of the foregoing, we enter the following

ORDER

And now, October 17, 1973, it is hereby ordered, adjudged and decreed that the decision of the Tax Review Board of Philadelphia, assessing plaintiff, Cuneo Press, Inc. of Pennsylvania, $15,403.45 as mercantile license tax, is reversed so far as the assessment covers receipts for deliveries by Cuneo to its customers' customers outside the City of Philadelphia.

---

[9] It is to be noted, moreover, that integrated publishing and printing operations such as Cuneo have been considered as *manufacturers* for Pennsylvania Capital Stock Act purposes under prior tax decisions: Commonwealth v. D. B. Canfield Co., Ltd., 7 Dauph. 195 (1890). See also Commonwealth v. Curtis Publishing Company, 237 Pa. 333, 85 Atl. 360 (1912).